UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

JOEL W. FREDERICK,

                Plaintiff,

     v.

STATE OF NEW YORK, OFFICE OF
MENTAL HEALTH, ROCHESTER
PSYCHIATRIC CENTER, COLOMBA
MISSERITTI, Director of Human Resource
Management, JOSEPH COFFEY, Director
of Facility Administration, DOUG LEE,
Associate Personnel Administrator, JOHN
BURROWS, Bureau of Employee Relations
Representative, PHILLIP GRIFFIN, Executive
Director, DR. GUTTMACHER, Clinical
Director, SGT. DAVID REED, Safety
Department Representative, TIM COLES,
Maintenance Supervisor II, RON
GERMAIN,

                Defendants.

———————————————————

**DECISION AND ORDER**

6:16-CV-06570 EAW

## INTRODUCTION

Plaintiff Joel W. Frederick ("Plaintiff") filed this action on August 13, 2016, pursuant to: § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, for discriminatory treatment due to a perceived disability and unlawful retaliation for engaging in the protected activity of opposing discrimination based on a perceived disability; New York Labor Law § 740; 42 U.S.C. § 1983 for First Amendment retaliation and abuse of process; and New York common law for the tort of assault. (Dkt. 1 at 2). Plaintiff filed an amended complaint on August 13, 2016, adding a claim under

§ 1983 for false arrest/false imprisonment.  (Dkt. 2 at 2).   John Burrows and Ron Germain ("Defendants") move to partially dismiss the amended complaint.  (Dkt. 19). For the following reasons, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Plaintiff's amended complaint.  (Dkt. 2).

Plaintiff began working for the Rochester Psychiatric Center ("RPC") in 2011 and is a civil service employee under New York State Civil Service Laws.  (Dkt. 2 at 4).  On August 15, 2015, Plaintiff, Defendant Germain,[1] and two others were working on "a new matrix for control RM Keyboard."  (*Id.*).  When Plaintiff indicated to Defendant Germain that the new matrix was incorrect, Defendant Germain allegedly "told Plaintiff to 'shut up' and threatened to throw [Plaintiff] out a window."  (*Id.*).  Almost six months later, Plaintiff filed a written complaint about the incident with the Occupational Safety and Health Administration ("OSHA") on February 3, 2016, and filed a Workplace Violence Reporting Form with an unspecified person or entity on February 8, 2016.  (*Id.* at 5).

Separately, in September 2015, Plaintiff was involved in a domestic incident in which his then-girlfriend contacted the police, who removed Plaintiff's lawfully possessed guns.  (*Id.*).  From September 2015 through March 2016, there were alleged "innocent conversations" with six co-workers about "the situation"[2] at Plaintiff's

---

[1]     Plaintiff alleges that Defendant Germain "is/was an employee of RPC serving as Maintenance Supervisor III and Plaintiff's immediate supervisor."  (Dkt. 2 at 4).

[2]     "[T]he situation" presumably refers to the domestic incident and not the incident with Germain; however, the form of the complaint makes this presumption less than clear.

workplace. (*Id.*). Plaintiff alleges that he made "no insinuations to his co-workers that he was a threat to the public, [his] co-workers or himself." (*Id.*). In February 2016, Plaintiff alleges that defendant Coles falsely informed defendant Coffey of comments that Plaintiff had allegedly made to his co-workers, such as: "I don't need guns; I can use my bow and arrow." (*Id.*).

The amended complaint then alleges that, on March 1, 2016, Plaintiff filed written complaints to the "Office of Mental Health ("OMH"), Internal Affairs and [OMH], Audit Department" accusing RPC's management of "falsely including and/or excluding information in its Statements of Conditions reports submitted to the joint commission regarding hospital's safety conditions including fire codes; conditions of buildings; conditions of doors as well as bid rigging."[3] (*Id.*).

The following day, on March 2, 2016, defendant Lee allegedly falsely reported to the local police Plaintiff's statements, including the reference to a bow and arrow, as quoted above, and, through the alleged decisions of defendants Griffin, Coffey, Misseritti, Lee, Guttmacher, and Reed, Plaintiff underwent a mental hygiene arrest. (*Id.* at 5-6). Plaintiff underwent a medical evaluation at Strong Memorial Hospital ("SMH") on March 2, 2016, which allegedly led to "RPC pereceiv[ing] or regard[ing] Plaintiff as disabled." (*Id.* at 6). Also on March 2, 2016, after his evaluation, Plaintiff was deemed fit to return to work; however, he was placed on administrative leave by RPC, defendant Misseritti, and Defendant Burrows, effective March 3, 2016. (*Id.*).

---

[3]   The complaint does not clarify either the entity to which the "joint commission" belongs or the hospital to which Plaintiff refers.

In response, Plaintiff filed a complaint with the New York State Division of Human Rights against RPC on March 28, 2016, alleging unlawful discrimination based on a disability. (*Id.* at 7). RPC and defendant Misseritti then allegedly placed Plaintiff on involuntary leave of absence on April 1, 2016. (*Id.*). This required Plaintiff to undergo a second medical examination before he could return to work. (*Id.*). Plaintiff alleges, "[t]he reasons set forth by RPC were that Plaintiff's continued presence on the job present[ed] a potential danger to patients, co-workers or self."[4] (*Id.*). Plaintiff further alleges that on April 6, 2016, RPC and defendant Misseritti made "numerous false statements to Employee Health Services regarding the reasons for Plaintiff's referral" and that they directed Plaintiff to undergo a "psychology examination" conducted by Employee Health Services, held on April 18, 2016. (*Id.*). On April 27, 2016, Employee Health Services deemed Plaintiff "fit to perform the essential functions of a General Mechanic." (*Id.*).

Plaintiff returned to work in May 2016. (*Id.*). On May 17, 2016, Plaintiff filed a retaliation complaint with OSHA, and on May 27, 2016, he filed a written discrimination complaint to defendants Misseritti and Coles "based on a perceived or regarded as disability [sic] due to the mental hygiene arrest and the mental health evaluation." (*Id.*). Plaintiff alleges a list of retaliatory behavior that he has suffered since his return to work "for engaging in protected activity," including being removed from the calling list for

---

[4]    "The reasons" for what exactly, are unclear from the complaint. The Court assumes that Plaintiff is referring to the reasons for placement on involuntary leave of absence.

locksmith overtime, being stripped of a master key for the facilities, which requires him to spend additional time on his tasks, being stripped of a key to storage facilities where tools essential to his job are located, ostracization, lost wages, and lost promotional opportunity. (*See id.* at 8).

Plaintiff filed his first and amended complaints on August 13, 2016 (Dkt. 1; Dkt. 2). Defendants moved to dismiss on October 27, 2016 (Dkt. 19), and Plaintiff responded on November 17, 2016 (Dkt. 22). Oral argument was held before the undersigned on January 26, 2017, at which time the Court reserved decision.

## DISCUSSION

### I.   Standard of Review

#### A. Lack of Subject Matter Jurisdiction

"A motion questioning the Court's subject matter jurisdiction must be considered before other challenges since the Court must have jurisdiction before it can properly determine the merits of a claim." *Djordjevic v. Postmaster Gen., U.S.P.S.*, 911 F. Supp. 72, 74 (E.D.N.Y. 1995). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court 'to weigh the evidence and satisfy itself as to the existence of its power

to hear the case.'" *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd*, 403 F.3d 76 (citation omitted). "The court may consider affidavits and other materials beyond the pleadings but cannot 'rely on conclusory or hearsay statements contained in the affidavits.'" *Young v. United States*, No. 12-CV-2342 (ARR)(SG), 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (citation omitted).

### B. Failure to State a Claim upon which Relief can be Granted

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

## II.   Motion to Dismiss as to Defendant Germain (Count VII) is Granted

Defendants argue that this Court does not have subject matter jurisdiction to hear the single claim launched against Defendant Germain—the common law tort of assault alleged in Count VII of the amended complaint—as the Court does not have the requisite supplemental jurisdiction to hear the state claim.  (Dkt. 19-1 at 3-4).

Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The Supreme Court has held that supplemental jurisdiction turns on whether a party's federal claim and state claim "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).   This standard is determined by asking "whether the relationship between the federal and state claims is 'such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."'"  *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014) (quoting *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *Gibbs*, 383 U.S. at 725)).  "To make this determination, courts 'have traditionally asked whether "the facts underlying the federal and state claims substantially overlap[] . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court."'"  *Id.* (quoting *Achtman v. Kirby, McInerney, & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006))  "When the federal and state claims rest[] on essentially unrelated facts," there is no supplemental jurisdiction.  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

The Court's exercise of this jurisdiction has been codified at 28 U.S.C. § 1367:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

Here, it is clear from the face of the complaint that the only claim against Defendant Germain—assault—is one of state law; thus, the claim must fall under this Court's supplemental jurisdiction in order for the Court to consider the claim on the merits.  Plaintiff appears to urge that the Court use only a "loose factual connection" standard to determine supplemental jurisdiction.  He avers that it is unsettled in the Second Circuit as to whether the exercise of supplemental jurisdiction requires derivation from a "common nucleus of operative fact" or whether a "loose factual connection between the [federal and state] claims" is enough, citing to *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004).  (Dkt. 22 at 4-5).  The court in *Jones* acknowledged that the Seventh Circuit has read § 1367 as requiring only a "loose factual connection between the claims" and noted that that standard "appears to be broader than the *Gibbs* test."[5]  However, "[the loose factual connection] standard has not been adopted

_____

[5]   Plaintiff represents the Second Circuit's holding in *Jones* as "[finding] that the facts surrounding the defendant's counterclaims and the plaintiff's claim had enough of a loose factual connection to satisfy the 'same case or controversy' requirement of Article III, and therefore § 1367." (Dkt. 22 at 4-5). This is patently incorrect. The *Jones* court found "[w]hether or not the *Gibbs* 'common nucleus' standard provides the outer limit of an Article III 'case,' and is therefore a requirement for entertaining a permissive

in this Circuit," *LaChapelle*, 37 F. Supp. 3d at 680 (collecting cases),[6] and "the Second

Circuit has continued to rely upon *Gibbs* when discussing the scope of supplemental

jurisdiction." *Id.* (citing *Montefiore Med. Ctr.*, 642 F.3d at 332); *see e.g.*, *Shukla v.*

*Sharma*, 586 F. App'x 752, 753 (2d Cir. 2014) ("That standard [of 28 U.S.C.   § 1367(a)]

is satisfied when the two disputes 'derive from a common nucleus of operative fact.'").

Therefore, this Court will apply the "common nucleus of operative fact" standard set out

in *Gibbs*.

Under the "common nucleus of operative fact" standard, the claim of assault

alleged against Defendant Germain does not fall within the ambit of this Court's

supplemental jurisdiction.  Plaintiff's federal claims, relying on facts pertaining to alleged

retaliation and discrimination based on a perceived disability or opposing discrimination

---

counterclaim that otherwise lacks a jurisdictional basis, the facts of [the case] satisfy *that standard . . . .*" *Jones*, 358 F.3d at 213 (emphasis added).

[6]    The *LaChapelle* court cited the following cases:

> *See, e.g., BLT Rest. Grp. LLC v. Tourondel,* 855 F. Supp. 2d 4, 10 n.4 (S.D.N.Y. 2012) ("Given some doubt as to the viability of the 'loose factual connection' standard in this circuit, we do not rely on it here."); *Rivera v. Ndola Pharmacy Corp.,* 497 F. Supp. 2d 381, 387 n.4 (E.D.N.Y. 2007) (rejecting application of "loose factual connection" standard). *But see In re Sept. 11th Liability Ins. Coverage Cases,* 333 F. Supp. 2d 111, 116 (S.D.N.Y. 2004) (endorsing "loose factual connection" standard).

*LaChapelle*, 37 F. Supp. 3d at 680. Even in *In re Sept. 11th Liability*, 333 F. Supp. 2d at 116, the court did not conclusively rely on the "loose factual connection" standard to determine supplemental jurisdiction.  *See id.* ("It remains an open question whether *Gibbs*['] 'common nucleus' standard defines the full breadth of Article III, and, thus, whether any factual relationship is required for claims to be a 'case or controversy.'").

based on perceived disability, abuse of process, and false arrest/imprisonment, do not "necessarily [bring] the facts underlying the state [assault] claim [pertaining to Germain] before the [C]ourt." *Achtman*, 464 F.3d at 335.  Defendant Germain is not a party to any of the federal claims and the circumstance under which Defendant Germain allegedly threatened to throw Plaintiff out of a window does not relate in any way to the circumstances under which Plaintiff underwent a mental hygiene arrest and was placed on various leaves.

Accordingly,  the Court does not have jurisdiction to consider the state law assault claim, and the assault claim against Defendant Germain is dismissed without prejudice.

## III.  Motion to Dismiss as to Defendant Burrows (Counts III, IV, V, VI) is Granted

Plaintiff initiates four counts against Defendant Burrows in the amended complaint: a violation of New York Labor Law § 740; and First Amendment retaliation, abuse of process, and false arrest/false imprisonment claims in violation of 42 U.S.C. § 1983.  The Court will address each in turn.

### A.  Count III: New York Labor Law § 740 Claim

As a preliminary matter, the Court notes that it has the requisite subject matter jurisdiction to adjudicate this state law claim under the supplemental jurisdiction analysis performed above.  *See* 28 U.S.C. § 1367.  The Count III claim is merely a state law variation of the federal retaliation claims brought under § 504 of the Rehabilitation Act and 42 U.S.C. § 1983 for First Amendment retaliation; it involves identical facts to those upon which Plaintiff relies in his federal claims.

- 10 -

> Labor Law § 740 creates a cause of action in favor of an employee who has suffered a "retaliatory personnel action" as a consequence of, inter alia, "disclos[ing], or threaten[ing] to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety," or as a consequence of "object[ing] to, or refus[ing] to participate in any such activity, policy or practice in violation of a law, rule or regulation."

*Fough v. Aug. Aichhorn Ctr. for Adolescent Residential Care, Inc.*, 139 A.D.3d 665, 678 (2d Dep't 2016) (quoting N.Y. Lab. Law § 740(2)(a), (c)).  Plaintiff need "not claim that []he cited any particular 'law, rule or regulation' at that time," nor is his pleading "required to identify the 'law, rule or regulation' violated."  *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 452 (2014).  However, the complaint "must identify the particular activities, polices or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct."  *Id.* at 453.  The complaint should not be dismissed "on the ground that plaintiff failed to plead that the alleged violations created and presented 'a substantial and specific danger to the public health or safety' or constituted health care fraud."  *Id.* at 454.

Plaintiff's only reference to Defendant Burrows in the amended complaint is that he "is/was an employee of RPC serving as Bureau of Employee Relations Representative and acting under color of state law" (Dkt. 2 at 4), and that, on March 2, 2016—the day on which Plaintiff was placed under mental hygiene arrest and was deemed by SMH as fit to return to work—Burrows, among others, placed Plaintiff on administrative leave. (*Id.* at 6).  In Count III of his complaint, Plaintiff alleges that he suffered "an adverse

employment action" "caused by his engagement in" submitting "complaints to OMH regarding false Statements of Conditions reports to the joint commission regarding audits on the hospital's safety conditions and bid rigging" against eight defendants, including Defendant Burrows. (*Id.* at 11).

While the allegation that Defendant Burrows placed Plaintiff on administrative leave—an adverse employment action—just one day after Plaintiff filed written complaints with OMH, Internal Affairs and OMH, Audit Department would lead this Court to find a sufficiently pleaded cause of action under § 740,[7] Plaintiff has overlooked subsection (3) of § 740. Section 740(3) provides:

> Application. The protection against retaliatory personnel action provided by paragraph (a) of subdivision two of this section pertaining to disclosure to a public body shall not apply to an employee who makes such disclosure to a public body unless the employee has brought the activity, policy or practice in violation of law, rule or regulation to the attention of a supervisor of the employer and has afforded such employer a reasonable opportunity to correct such activity, policy or practice.

N.Y. Lab. Law § 740(3).  As defined in the statute, a "public body" includes "any federal, state, or local regulatory, administrative, or public agency or authority, or instrumentality thereof . . . ." N.Y. Lab. Law § 740(1)(d)(iii). The Court takes judicial notice of the fact OMH is a New York State agency, and, therefore, a public body. *See* Fed. R. Evid. 201(b)(1) ("The court may judicially notice a fact that is not subject to reasonable dispute

---

[7] The Court would so find because the employer's complained-of activities are identified with sufficient specificity and the passing of only one day between the complaint and the alleged adverse employment action is sufficient circumstantial evidence of retaliation. S*ee Anderson v. State of N.Y., Office of Court Admin. of the Unified Court Sys.*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009) ("Temporal proximity is strong circumstantial evidence of improper intent.").

because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Accordingly, Plaintiff is not protected under § 740 unless he brought the complained-of activity to the attention of a supervisor of his employer, affording RPC a reasonable opportunity to correct such complained-of activity, before reporting such activity to a "public body," namely, OMH. As Plaintiff has pleaded no such facts, Defendants' motion to dismiss is granted as to Count III against Defendant Burrows.[8] However, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). In other words, Plaintiff may potentially be able to correct this deficiency in his § 740 cause of action. Accordingly, Plaintiff's New York Labor Law § 740 claim is dismissed as to Defendant Burrows without prejudice. *See id.*

## B. Section 1983 Claims

"In order to maintain a [§] 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights,

---

[8]    While Defendants did not raise the § 740(3) issue, the Court addresses it because it is not an affirmative defense. While there is almost no case law on the matter, a structural analysis of the statute leads to that conclusion: § 740(4)(c) provides "defense[s] to any action brought pursuant to this section . . . ." and § 740(3) stands on its own, apart from the defense subsection. *See, e.g.*, *Chung v. Better Health Plan*, No. 96 CIV. 7310(JGK), 1997 WL 379706, at *4 (S.D.N.Y. July 9, 1997) (dismissing the plaintiff's § 740 claim, in part, because *"the plaintiff does not attempt to plead* that she has met the statutory requirement that she notify a 'supervisor of the employer' in order to receive statutory protection under § 740(2)(a)") (emphasis added). In other words, pleading compliance with § 740(3) was part of Plaintiff's affirmative obligation in this case to appropriately plead his § 740 cause of action.

privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). "It is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Davidson v. Mann*, 129 F.3d 700, 701 (2d Cir. 1997). Additionally, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Because Plaintiff alleged that Defendant Burrows was acting under color of state law and was personally involved at least in placing Plaintiff on administrative leave, the Court will examine whether Plaintiff has sufficiently alleged that Defendant Burrows deprived Plaintiff of any constitutional or federal rights, privileges, or immunities under each alleged § 1983 violation.

### 1. Count IV: First Amendment Retaliation

To state a prima facie First Amendment retaliation claim, Plaintiff must allege that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, 'so that it can be said that his speech was a motivating factor in the determination.'" *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citations omitted). "Public employee speech is protected from retaliation under the First Amendment only where (i) the employee spoke as a citizen, rather than pursuant to official duties, and (ii) the employee spoke on a matter of public concern." *Dingle v. City*

*of N.Y.*, No. 10 Civ. 4(SAS), 2011 WL 2682110, at *4 (S.D.N.Y. July 7, 2011) (citing *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009)).

As to the first element of protected speech, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "The Second Circuit has ruled that 'speech can be "pursuant to" a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.'" *Dingle*, 2011 WL 2682110, at *4 (quoting *Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 593 F.3d 196, 203 (2d Cir. 2010)). "The court is to look beyond 'formal job descriptions' to determine if the speech was 'part of what [plaintiff] was employed to do,' by looking to whether the speech 'owes its existence to [the] public employee's professional responsibilities.'" *Id.* (alteration in original) (quoting *Garcetti*, 547 U.S. at 421).

Here, Plaintiff has not sufficiently alleged that he was speaking as a citizen, beyond the conclusory allegation that he was engaging in "speech in his capacity as a public citizen"[9] (Dkt. 2 at 12); thus, his claim fails at the first element. Plaintiff's complaints to OMH of false information provided by RPC regarding fire codes, conditions of buildings, conditions of doors, and bid rigging could easily "owe[] [their]

---

[9]   The Court notes that, while it would not cure the conclusory nature of the allegation, the correct allegation would be that Plaintiff was acting as a *private* citizen. *See Lynch v. Ackley*, 811 F.3d 569, 578 (2d Cir. 2016) ("[S]peech made by employees 'pursuant to . . . official duties' rather than 'as a private citizen' is not protected from retaliation." (quoting *Garcetti*, 547 U.S. at 421-22)).

existence to [Plaintiff's] professional responsibilities" as a general mechanic, and Plaintiff has not alleged otherwise.

Accordingly, Plaintiff's claim of First Amendment retaliation under § 1983 is dismissed as to Defendant Burrows without prejudice. *See Cortec Indus.*, 949 F.2d at 48.

## 2. Count V: Abuse of Process

Under Count V, Plaintiff alleges only that the "actors' [unspecified] actions were motivated by an intent to harass and injure Plaintiff" and were for the "purpose of supporting her goal [to whom Plaintiff is referring is unclear] of requiring Plaintiff to undergo a psychology examination . . . ." (Dkt. 2 at 13). These statements do not amount to an allegation of a deprivation of constitutional or federal rights, privileges or immunities, thereby precluding Count V from passing muster as a § 1983 claim.

Even disregarding the above, no criminal charges were brought against Plaintiff in relation to any of the incidents described in the complaint. *See Disability Advocates, Inc. v. McMahon*, 279 F. Supp. 2d 158, 165 (N.D.N.Y. 2003) ("[B]y its plain terms, New York's Criminal Procedure Law is inapplicable to custodial detentions under the Mental Hygiene Law. *See* N.Y. Crim. Proc. Law §1.10 (providing that the Criminal Procedure Law applies only to criminal actions and proceedings)."). Therefore, the Court assumes that Plaintiff's § 1983 claim for abuse of process is brought for abuse of *civil* process. The Second Circuit has "held that '"section 1983 liability . . . may not be predicated on a claim of malicious abuse of" . . . *civil* process.'" *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (emphasis in original) (quoting *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994)).

Accordingly Count V is dismissed as to Defendant Burrows with prejudice. *See Cortec Indus.*, 949 F.2d at 48 ("[W]here a plaintiff is unable to allege any facts sufficient to support its claim, a complaint should be dismissed with prejudice.").

### 3. Count VI: False Arrest/ False Imprisonment

Plaintiff's false arrest/false imprisonment claim presumably is in response to his mental health hygiene arrest. However, Plaintiff does not allege that Defendant Burrows was involved in any way in the decision to arrest Plaintiff. (*See* Dkt. 2 at 6 ("Also on March 2, 2016, RPC, by and through the decisions of Griffin, Coffey, Misseritti, Lee, Dr. Guttmacher and Reed, had Plaintiff arrested by Metal Hygiene Arrest.")). Plaintiff solely alleges that Defendant Burrows was involved with the decision to place Plaintiff on administrative leave once Plaintiff was deemed fit to return to work *after* the mental hygiene arrest. (Dkt. 2 at 6). Accordingly, Count VI as against Burrows fails for lack of alleged personal involvement, *see Colon*, 58 F.3d at 873, and is dismissed as to Defendant Burrows without prejudice. *See Cortec Indus.*, 949 F.2d at 48

### CONCLUSION

For the foregoing reasons, Defendants' motion to partially dismiss (Dkt. 19) is granted. The assault claim against Defendant Germain (Count VII) is dismissed without prejudice for lack of supplemental jurisdiction. Count V is dismissed with prejudice, but Counts III, IV, and VI are dismissed without prejudice and Plaintiff is granted leave to replead those claims. A second amended complaint must be filed by February 27, 2017.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 3, 2017
       Rochester, New York